UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GERRIN LAPEYROUSE | § | C.A. NO. |
| | § | |
| VS. | § | |
| | § | |
| SHELL OIL COMPANY and | § | |
| HELMERICH & PAYNE, INC. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff Gerrin Lapeyrouse ("Plaintiff"), complaining of Defendants Shell Oil Company ("Shell") and Helmerich & Payne, Inc. ("H&P") (collectively "Defendants"), and, for cause of action, would respectfully show this Honorable Court as follows:

**I. PARTIES**

1.1   Plaintiff Gerrin Lapeyrouse, is a U.S. citizen and resident of Louisiana.

1.2   Defendant Shell Oil Company, is a Delaware corporation with its principal place of business in Houston, Texas, doing business in this District, Division, and the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

1.3   Defendant Helmerich & Payne, Inc., is a Delaware corporation, doing business in this District, Division, and the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Corporation Service

Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## II. JURISDICTION

2.1     This case is brought pursuant to the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, *et seq.*

## III. VENUE

3.1     Venue is proper in this OCSLA action pursuant to 28 U.S.C. §1391 as Defendants reside in this District.

## IV. FACTS

4.1     On or about September 27, 2020, Plaintiff was working for Halliburton Energy Services as a pressure control operator on Shell's Ursa platform offshore in the Gulf of Mexico. At the time of the incident Plaintiff was assisting with rigging in order to perform slip line work. Plaintiff was 15 feet in the air on scaffolding, unscrewing a wireline lubricator connection by hand with the assistance of the crane on board the platform. The crane operator was employed by H&P. With no warning, Plaintiff was suddenly jerked by a movement of the crane, sustaining seriously bodily injuries.

## V. CAUSE OF ACTION

### A.     NEGLIGENCE AND GROSS NEGLIGENCE

5.1     As stated above, on or about September 27, 2020, Plaintiff sustained serious and disabling injuries while working on Shell's offshore platform.

5.2 Plaintiff would show that nothing he did or failed to do on the occasion in question caused or in any way contributed to cause his injuries. To the contrary, the occurrence in which Plaintiff was injured and the injuries which he sustained were proximately caused by the negligence and/or gross negligence, as those terms are understood in law, on the part of the Defendants, their agents, servants and/or employees who were acting in the course and scope of their employment for Defendants at all times material to this cause of action.

5.3 Shell is liable for the subject accident and Plaintiff's injuries and resultant damages by reason of its negligence, gross negligence, and/or conditions attributable to it, directly and/or vicariously, by and through its agents, representatives and/or employees, in one or more of the following particulars, among others:

(a) failing to provide proper and adequate supervision of the crane;

(b) failing to properly coordinate the lift;

(c) failing to take reasonable precautions for Plaintiff's safety;

(d) failing to maintain adequate communication with the crane operator;

(e) failing to exercise stop work authority;

(f) failing to perform adequate safety meetings and analyses to identify and minimize the risk to Plaintiff and others;

(g) failing to assess the conditions on board the platform prior to using the crane;

(h) failing to properly train its employees about the proper conditions to conduct operations involving use of the crane;

      (i)      failing to have enough personnel to safely perform the work;

      (j)      failing to ensure the safety of workers aboard the platform;

      (k)     failing to perform all operations in a safe and work-like manner;

      (l)      failing to properly plan and supervise the job;

      (m)    failing to provide adequate equipment for the task at hand; and,

      (n)     other acts of negligence and/or omissions to be shown at trial herein.

5.4     Plaintiff would further show that Shell had custody or control of the platform, and was responsible for maintaining the platform in a reasonably safe condition, free from hazards that would expose the Plaintiff to injury.

5.5     H&P is liable for the subject accident and Plaintiff's injuries and resultant damages by reason of its negligence, gross negligence, and/or conditions attributable to it, directly and/or vicariously, by and through its agents, representatives and/or employees, including the crane's operator, in one or more of the following particulars, among others:

      (a)     failing to provide proper and adequate supervision of the work;

      (b)     failing to properly coordinate the lift;

      (c)     failing to take reasonable precautions for Plaintiff's safety;

      (d)     failing to maintain adequate communication with workers on the platform;

      (e)     failing to exercise stop work authority;

      (f)     failing to perform adequate safety meetings and analyses to identify and minimize the risk to Plaintiff and others;

(g) failing to assess the conditions on board the platform prior to using the crane;

(h) failing to properly train its employees about the proper conditions to conduct operations involving use of the crane;

(i) failing to have enough personnel to safely perform the work;

(j) failing to ensure the safety of workers aboard the platform;

(k) failing to perform all operations in a safe and work-like manner;

(l) failing to properly plan and supervise the job;

(m) failing to provide adequate equipment for the task at hand; and,

(n) other acts of negligence and/or omissions to be shown at trial herein.

5.6     As a result of Defendants' negligent actions and/or inactions, Plaintiff has been caused to endure considerable pain and suffering, and as a result thereof, was obliged to obtain medical care and treatment, caused to lose time from his employment, and sustain the monetary and financial loss occasioned by said lost time from work.  Plaintiff has been prevented, and in all likelihood will continue to be prevented, from engaging in his usual occupations, pastimes and pursuits which he would have engaged in but for the injury aforementioned.

5.7     Plaintiff would show that each of the foregoing, individually or collectively, constituted negligence, which was a proximate cause of his injuries and damages complained of herein.

## VI.  DAMAGES (PECUNIARY AND NON-PECUNIARY)

6.1     As a result of these occurrences and the negligence and/or gross negligence of Defendants, Plaintiff sustained severe and permanent injuries to his body.  In addition to the expenses incurred by him and incapacity to labor caused by his injuries, he has been put to much expense for medical treatment; such expense is still continuing and he is unable to state the full amount thereof.

6.2     Categorical damages which Plaintiff seeks to recover from Defendants include compensation for the following:

(a) physical disability sustained by Plaintiff from the date of injury to the time of trial;

(b) future physical disability reasonably anticipated to be sustained by Plaintiff in the future;

(c) physical pain and suffering and mental anguish sustained by Plaintiff from the date of injury to time of trial;

(d) physical pain and suffering and mental anguish which is reasonably anticipated to be suffered by Plaintiff in the future;

(e) loss or earnings sustained by Plaintiff from the date of injury to time of trial;

(f) loss of earning capacity reasonably anticipated to be suffered by Plaintiff in the future;

(g) reasonable and necessary medical expenses incurred by Plaintiff in the treatment of Plaintiff's injuries from the date of injury to time of trial;

(h) reasonable and necessary medical expenses reasonably anticipated to be sustained by Plaintiff in the future for treatment of Plaintiff's injuries;

(i)     past and future physical disfigurement;

(j)     past and future physical impairment; and

(k)     any other damage to which Plaintiff is entitled under applicable law.

## VII. INTEREST

7.1     Plaintiff seeks pre-judgment and post-judgment interest as allowed by law.

## VIII.  JURY DEMAND

8.1     Plaintiff demands a jury trial herein.

WHEREFORE, Plaintiff prays:

(a)     that process in due form of law according to the practice of this Honorable Court issue against Defendants summoning them to appear and answer, all and singular, the matters aforesaid;

(b)     that a judgment may be entered in favor of Plaintiff against Defendants for the amount of his claims to be determined, including for actual damages in an amount exceeding the jurisdictional limits of this Court; prejudgment and postjudgment interest; attorney's fees; costs of suit; and

(c)     for such other and further relief as the Court and justice may deem just and appropriate under the circumstances of the cause, and to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Eric J. Rhine*
Eric J. Rhine
SBN 24060485 / SDTX ID 1786163
erhine@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:   713-653-5656
ATTORNEYS FOR PLAINTIFF